**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NIMONICA WELLINGTON,<br><br>Plaintiff,<br><br>vs.<br><br>MAD GARMENTS, LLC, and MARC D'AMELIO,<br><br>Defendants. | No. 1:16-cv-4543<br><br>**COMPLAINT** |

## COMPLAINT AND DEMAND FOR A JURY TRIAL

Plaintiff Nimonica Wellington ("Plaintiff" or "Ms. Wellington"), by and through her attorneys, Gardy & Notis, LLP, as and for her Complaint in this action against Defendants Mad Garments, LLC ( "Mad Garments" or the "Company") and Marc D'Amelio, in his official and individual capacities ("Mr. D'Amelio") (collectively, "Defendants"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1. This is an action for declaratory relief, as well as monetary damages, to redress Defendants' unlawful employment practices against Plaintiff, including Defendants' failure to timely pay commissions in violation of Section 191 of the New York State Labor Law ("NYLL") and practice of making unlawful deductions from Plaintiff's wages, in violation of Section 193 of the NYLL.

2. Defendant's unlawful conduct was intentional and has caused and continues to cause Plaintiff to suffer substantial economic damages.

## THE PARTIES

3. Ms. Wellington is a resident of New York, New York. Ms. Wellington was employed by Defendants as an Account Manager in their New York City office from in or

around May 2007 until on or about May 5, 2014. At all relevant times, Plaintiff met the definition of an "employee" under all applicable statutes.

4. Defendant Mad Garments, LLC is a limited liability company organized under the laws of the State of Connecticut that does business in New York. Defendant Mad Garments operates as a fashion apparel company and maintains its principal place of business in Connecticut. At all relevant times, Defendant Mad Garments met the definition of an "employer" under all applicable statutes.

5. Defendant Marc D'Amelio is the owner of Mad Garments, LLC and is a resident of Norwalk, Connecticut. At all relevant times, Defendant D'Amelio met the definition of an "employer" under all applicable statutes.

## **JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiff is a citizen of the state of New York and Defendant D'Amelio is a citizen of the state of Connecticut, while Defendant Mad Garments maintains its principal place of business in Connecticut. The amount in controversy exceeds $75,000.00.

7. Venue is proper in the United States District Court, Southern District of NewYork pursuant to 28 U.S.C. § 1391(a) because all of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein and the vast majority of work performed by Plaintiff, occurred in this District.

## **FACTUAL ALLEGATIONS**

8. Ms. Wellington began working for Mad Garments as an Account Manager in New York City in May of 2007.

9. Mad Garments is wholly owned by Defendant D'Amelio, who maintains absolute discretion of over all matters of significance, including, but not limited to, decisions regarding the compensation of Company employees.

10. In her role as an Account Manager, Ms. Wellington would be responsible for selling athletic apparel and hats, licensed by professional sports leagues, and to teams' various retailers and outlets in the New York metropolitan area.

11. Mad Garments exclusively sells clothing and hats designed and manufactured by Mitchell & Ness Nostalgia Co. ("Mitchell & Ness"), a wholly-owned subsidiary of Adidas AG at the time of Plaintiff's employment.

12. Mad Garments markets and sells apparel and hats on a semi-annual schedule that coincided with the spring and fall releases of Mitchell & Ness.

13. With respect to the spring line, Ms. Wellington would receive a book of available items from Mitchell & Ness at a sales meeting in or around November of the preceding year. Ms. Wellington would then have four months to enter into contracts with clients. As soon as contracts were signed by the client, they would be entered into the system maintained by Defendant Mad Garments and into a separate system maintained by Mitchell & Ness.

14. In or around March of each year, at the expiration of the four-month period, Mad Garments would place orders for all merchandise ordered by each of their clients. Those orders would be scheduled for delivery beginning in August and continuing to December. The clients would then pay Mad Garments upon receipt of the merchandise.

15. The fall line followed a similar pattern each year, with Account Managers marketing and selling merchandise between July and November, orders being placed with Mitchell & Ness in November, and merchandise being shipped to clients between January and March.

16. From the outset of her employment, Ms. Wellington was paid a base salary together with a commission that was calculated as three percent (3%) of all apparel sales she generated for Defendant and one percent (1%) of all sales of hats generated for Defendants.

17. Although Ms. Wellington, together with all other employees of Mad Garments, would receive her commission payments several weeks after the client had paid for the merchandise, commissions were actually earned several months prior, when the client entered

into a contract to purchase merchandise and that contract was entered into Mad Garments' system.

18. Each commission payment would be accompanied by a statement outlining the revenue generated from the sales for the commission payments. However, despite being paid on a commissioned basis, Defendants never generated a contract or commission plan governing Ms. Wellington's compensation structure.

19. In or around the winter of 2013 to 2014, Ms. Wellington closed approximately 100 deals on various accounts worth approximately $58,960.

20. On or about April 7, 2014, Defendant informed Plaintiff that because of a decrease in revenue, the commission rate on apparel would be lowered to 1% beginning in May 2014, and that the lower commission rate would apply retroactively to all sales generated in the previous year.

21. As a result of Defendants' retroactive change to the apparel commission rate, Ms. Wellington was not paid approximately $3,750.00 in earned commissions.

22. On April 24, 2014, Plaintiff formally notified Defendant that she was resigning.

23. At the time she resigned, Ms. Wellington had earned approximately $64,000 in commissions between November, 2013 and March, 2014 which Defendants had yet to pay, in addition to the approximately $3,750 that Defendants had unlawfully deducted from her wages by retroactively lowing her rate on previously earned commissions.

24. On April 28, 2014 Defendant D'Amelio emailed Ms. Wellington acknowledging that Ms. Wellington was still owed commissions on several open orders and that he would pay her for those open orders.

25. On June 13, 2014, Plaintiff emailed Defendant about the status of her commission payments. In response, Defendant D'Amelio informed Ms. Wellington that he would not pay her earned commission because he was angry that she went to work for a competitor.

**FIRST CAUSE OF ACTION**

**(Failure to Timely Pay Commissions in Violation of N.Y. Lab. Law 191(c))**

26. Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

27. Plaintiff earned over $63,000.00 in commissions that remained unpaid at the time of her resignation in April 2014.

28. Plaintiff did not receive those commissions within five days of her termination, or within five days of when they became due.

29. Plaintiff has still not received the commissions that she has earned.

30. Defendants' failure to pay deductions was willful and malicious, entitling Plaintiff to an award of liquidated damages.

31. As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff has sustained damages, including loss of wages, in an amount to be established at trial, plus interest, attorneys' fees and costs.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Unlawful Deduction From Wages in Violation of N.Y. Lab. Law § 193)**

32. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

33. Under NYLL § 193, as amended, it is unlawful for an employer to make deductions from the wages of an employee, unless those deductions are (a) made in accordance with a law or a governmental agency rule or regulation, (b) expressly authorized in writing by the employee and are for the benefit of the employee, (c) related to recovery of an overpayment of wages where such overpayment is due to a mathematical or other clerical error by the employer; or (d) related to advances of salary or wages made by the employer to the employee.

34. At all relevant times herein, the parties had an agreement pursuant to which Plaintiff would be entitled to a commissions as part of her compensation, and/or the actual policy and practice of Defendants established that Plaintiff was entitled to commissions as part of her compensation.

35. In 2013, the commission rate was 1% of all headware sales and 3% of all apparel sales.

36. The 2014 commission policy changed from 3% to 1% of all apparel sales, a 2% deduction.

37. Within the applicable statute of limitations, Defendants unlawfully and willfully deducted approximately $3,750 in a commissions payment earned by Plaintiff from her earned wages based off of sales she booked in July 2013, which were entered into the Defendant's system in September 2013 and paid in May 2014, by retroactively lowering the rate on these earned wages from three percent to one percent.

38. Defendants' practice of making deductions from Ms. Wellington's commission payments was willful and not in good faith, entitling Plaintiff to an award of liquidated damages.

39. As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff has sustained damages, including loss of wages, in an amount to be established at trial, plus interest, attorneys' fees and costs.

## THIRD CAUSE OF ACTION
**(Failure to Have a Written Commission Agreement in Violation of N.Y. Lab. 191(c))**

40. Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

41. Plaintiff received commissions as part of her compensation package.

42. From the period between the start of her employment in 2007 and her separation in April 2014, Plaintiff neither received nor signed a written agreement regarding the payment of her commissions.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court enter judgment in her favor and against Defendant, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violated the laws of the the State of New York and;

B. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, her unpaid commissions, and liquidated damages;

C. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

D. An award of costs and reimbursement of expenses that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

E. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

DATED: June 15, 2016

**GARDY & NOTIS, LLP**

By: *s/Orin Kurtz*

Orin Kurtz

Tower 56
126 East 56th Street, 8th Floor
New York, New York 10022
Tel: (212) 905-0509
Fax: (212) 905-0508
okurtz@gardylaw.com

*Attorneys for Plaintiff*